IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL J. BORDONI, | |
|---|---|
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 18-3937 |
| CHASE HOME FINANCE LLC, | |
| *Defendant.* | |

**PAPPERT, J.** April 10, 2019

## MEMORANDUM

After his wife Bernadette died intestate in 2010, Michael Bordoni became the sole owner of the couple's home at 1110 Moore Street in Philadelphia. For years following his wife's passing, Michael made his monthly mortgage payments. Eventually, after becoming frustrated with his inability to receive information and an explanation from Chase Home Finance regarding the terms of his indebtedness, Michael sued Chase in 2018 and asserted six claims under: the Real Estate Settlement Procedures Act (RESPA); the Truth-In-Lending Act (TILA); the Declaratory Judgment Act; the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) and Pennsylvania state law for an accounting and restitution, breach of contract and unjust enrichment. Chase filed a Motion to Dismiss Michael's Complaint for failure to state a claim. The Court grants in part and denies in part Chase's Motion for the reasons that follow.

I

On November 30, 2004, the Bordonis purchased the property at 1110 Moore Street as tenants by the entireties. (Compl. ¶ 5 & Ex. A., ECF No. 1.) Michael did not qualify for a mortgage, but Chase approved Bernadette's application. (*Id.* at ¶ 8.) Bernadette subsequently signed a Truth-In-Lending Disclosure Statement which provided the annual percentage rate, finance charge, amount financed and total payments for the loan. (*Id.* at ¶¶ 7–9.) Although Michael alleges he never received a TILA packet, (*id.* at ¶ 14), he signed the mortgage and the Adjustable Rate Rider bears his initials, (*id.* at ¶ 13 & Ex. D). Michael asserts that Chase sent monthly statements to and communicated with Bernadette only. (*Id.* at ¶ 16.)

The mortgage fell into arrears on January 1, 2008. (*Id.* at ¶ 17.) Chase initiated a foreclosure action seven months later in the Philadelphia County Court of Common Pleas. (*Id.*) That December, Chase offered Bernadette a Forbearance Plan Agreement, which she accepted. (*Id.* at ¶ 19.) "As a precondition for qualifying for the loan," Bernadette made a down payment of $9,000 and then tendered six monthly average payments of $1,292 from February through July of 2009. (*Id.*) Bernadette's payments pursuant to the Forbearance Plan Agreement did not bring the loan current. *See* (*id.* at ¶ 21). On July 2, 2009, Chase informed Bernadette that her adjustable interest rate was 6.5%, her monthly principal and interest payment was reduced to $1,612.64 and the outstanding balance on the mortgage was $240,714.78. *See* (*id.* at ¶ 21). The following month, Chase told Bernadette that in order to qualify for a Loan Modification, she had to enter into a trial program that required her to make payments from August through December of 2009. (*Id.* at Ex. I.) On January 2, 2010, Chase advised

Bernadette that her adjustable interest rate was 5.75%, her monthly principal and interest payment was reduced to $1,502.54 and the outstanding balance on the mortgage was $238,036.91. *See* (*id.* at ¶ 23). A few weeks later, on January 18, Chase approved Bernadette for the Loan Modification, which allowed her to avoid foreclosure. (*Id.* at ¶ 24.) Now, Bernadette's fixed interest rate was 7.5%, her monthly payments were $2,138.36 and the term of the loan was an additional forty years. (*Id.* at ¶ 25.)

Bernadette died intestate on June 16, 2010. *See* (*id.* at ¶ 27 & Ex. B). Since Chase purportedly had not included Michael in its communications regarding the Loan Modification, Michael "sought an explanation" from Chase on how Bernadette's payments had been applied to the mortgage's overall balance. *See* (*id.* at ¶ 28–31). Michael alleges that he tried to speak with Chase but it "would speak only with an executor of [Bernadette's] estate." (*Id.* at ¶¶ 32–33.) Michael was afraid "to defend another mortgage foreclosure action" so he "continued to make timely monthly payments on the mortgage." (*Id.* at ¶ 36.)

Because "Bernadette died without assets of her own [and Michael] did not wish to go [through] the unnecessary expense of raising an estate," Michael did not take out letters of administration on Bernadette's estate until July 23, 2018. (*Id.* at ¶ 34 & Ex. M.) On August 21, 2018, Chase provided Michael with the mortgage documents, which Michael alleges contain his fraudulently added signature. (*Id.* at ¶ 43.) Michael subsequently filed his Complaint on September 12, 2018. (Compl., ECF No. 1.) Chase now moves to Dismiss the Complaint for failure to state a claim. (Mot. Dismiss, ECF No. 9.)[1]

---

[1]	Michael contends that the exhibits Chase attached to its Motion to Dismiss convert that motion into one for summary judgment. (Resp. Opp'n at 1–2, ECF No. 10.) That is not the case.

3

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the

same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

RESPA's principal purpose is "to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process," both in the actual settlement process and in the "servicing" of a federally related mortgage loan. *Jones v. Select Portfolio Servicing, Inc.,* 2008 WL 1820935, at *9 (E.D. Pa. Apr. 22, 2008). Michael argues that Chase violated 12 U.S.C. Section § 2605(e) of RESPA by refusing "to respond to [his] reasonable requests" for information regarding his mortgage payments. (Compl. ¶¶ 54–55.) Chase contends that RESPA's statute of limitations bars his claim.[2] Section 2614 of RESPA provides that an action under § 2605 must be brought within three years "from the date of the occurrence of the violation." 12 U.S.C. § 2614. The Third Circuit interprets "from the date of the occurrence of the violation" as the date the loan closed. *In re Cmty. Bank of N. Va.,* 622 F.3d 275, 281 (3d Cir. 2010), *as amended* (Oct. 20, 2010). Here, the loan closed on November 30, 2004, requiring Michael to assert a claim under RESPA on or before November 30, 2007. (Compl. ¶ 5.) Further, Michael does not even respond to Chase's

---

[2] The Federal Rules of Civil Procedure require a defendant "to plead an affirmative defense in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing to *Robinson v. Johnson,* 313 F.3d 128, 134–35 (3d Cir. 2002)). The Third Circuit, however, permits a statute of limitations defense to be raised under Rule 12(b)(6) "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id.* (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir. 1975)). "'If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'" *Id.* (quoting *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978)). Here, the bar for Michael's RESPA and TILA claims is apparent on the face of his Complaint.

5

argument and "[f]ailure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed." *Bridges v. Astrue*, No. 12-CV-02316, 2014 WL 1281158, at *14 (E.D. Pa. Mar. 28, 2014) (quoting *Nelson v. DeVry, Inc.*, No. CIV.A. 07-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009)).

TILA requires lenders to make certain disclosures to borrowers and provides for a civil cause of action against creditors who violate these disclosure provisions. *See* 15 U.S.C. § 1638. Michael concedes that his TILA claim is barred by the one-year statute of limitations under 15 U.S.C. § 1640(e). *See* (Resp. Opp'n at 3, ECF No. 10) ("Plaintiff agrees that his TILA claim may be dismissed based solely on the statute of limitations.").

IV

Michael relies upon his RESPA and TILA claims as the jurisdictional basis for his declaratory judgment claim. (Compl. ¶ 59.) Chase argues that this claim is duplicative of Michael's RESPA and TILA claims and "fails to set forth an independent cause of action or independent request for relief." (Resp. Opp'n at 15.) The Declaratory Judgment Act provides that a court "may declare the rights . . . of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In *Algrant v. Evergreen Valley Nurseries Ltd. Partnership*, the Third Circuit held:

> [W]hen plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of

6

action. Otherwise, the statute of limitations can be circumvented merely by "[d]raping their claim in the raiment of the Declaratory Judgment Act." 126 F.3d 178, 184–85 (3d Cir. 1997). As Michael's underlying RESPA and TILA claims are barred by the statute of limitations, his request for declaratory judgment is also time-barred because it is predicated upon the same cause of action. *See, e.g.*, *Arezzo v. City of Hoboken*, 719 F. App'x 115, 119 (3d Cir. 2018) (citing to *Algrant* in finding that plaintiff cannot "evade the statute of limitations by recharacterizing his Section 1983 claim as claims for declaratory and injunctive relief"); *Berkery, v. Verizon Commc'ns, Inc.*, No. 2:15-CV-1085, 2015 WL 6599694, at *2 (E.D. Pa. Oct. 29, 2015), *aff'd sub nom. Berkery v. Verizon Commc'ns Inc*, 658 F. App'x 172 (3d Cir. 2016) (holding that, because the underlying FCA claim was barred by the statute of limitations and the declaratory judgment claim was predicated upon the same cause of action as the FCA claim with the exception of the relief requested, the declaratory judgment claim was also time-barred.).

V

Michael next argues that Chase violated the UTPCPL by engaging in "unfair or deceptive acts or practices," including, among others, misrepresenting the amount of his debt, imposing interest rates unauthorized by law or contract and forging his signature on the Adjustable Rate Rider. (Compl. ¶¶ 62, 64.) Chase argues that the economic loss doctrine bars Michael's UTPCPL claim because it is based entirely upon the mortgage agreement and his only alleged losses are economic in nature. (Mot. Dismiss at 19–20.)

The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive practices or acts" in the conduct of trade or commerce. *Balderston v.*

*Medtronic Sofamor Danek*, Inc., 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001).  The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)).  Under this doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage."  *Excavation Techs., Inc. v. Columbia Gas Co. of Pa.,* 604 Pa. 50, 985 A.2d 840, 841 (2009).

The Third Circuit Court of Appeals predicted in *Werwinski* that the Pennsylvania Supreme Court would apply the economic loss doctrine to bar UTPCPL claims.  286 F.3d at 679–81.  The Supreme Court has yet to take up the issue, though the Superior Court of Pennsylvania has since held, without any analysis, that the economic loss doctrine is inapplicable to UTPCPL claims.  *See Dixon v. Nw. Mut.*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016) ("[Plaintiff's] UTPCPL claim is not barred by the economic loss doctrine.") (citing *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013) ("The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence.  Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to [plaintiff's] UTPCPL claims.")).  These rulings, and the lack of guidance from the Supreme Court of Pennsylvania, have led district courts within this Circuit to reach disparate conclusions as to whether

*Werwinski* remains binding precedent. *See McDonough v. State Farm Fire & Cas. Co.*, 18-cv-02247, 2019 WL 480139, \*5 (E.D. Pa. Feb. 7, 2019) (collecting cases).

District courts are bound by the Third Circuit's previous holdings "in the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law." *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1343 (3d Cir. 1990) (emphasis in original). In *Robinson v. Jiffy Executive Limousine Company*, the Third Circuit concluded that the New Jersey appellate court's decisions constituted persuasive evidence of a change in state law, noting that, "although state intermediate appellate decisions are not automatically controlling where the highest court of the state has not spoken," federal courts sitting in diversity "must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law." 4 F.3d 237, 242 (3d Cir. 1993).

The issue is whether *Knight* and *Dixon* constitute persuasive evidence of a change in Pennsylvania law. While some judges have found that they do, *see Busch v. Domb*, No. CV 17-2012, 2017 WL 6525779, at \*4 (E.D. Pa. Dec. 21, 2017) and *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 414 (E.D. Pa. 2016), others have reached the opposite conclusion. The Court agrees with the latter view, articulated more recently in *Powell v. Saint Joseph's University*, No. CV 17-4438, 2018 WL 994478, at \*9 (E.D. Pa. Feb. 20, 2018).[3]

---

[3] *Powell* did not explicitly address *Dixon*, presumably because *Dixon* cited to *Knight* without analyzing the economic loss doctrine. 146 A.3d at 790. There, the court noted the "tension" in its application in state and federal court. *See id.* at 790 n.12. ("This Court's decision in *Knight* is in tension with . . . the Third Circuit's holding that the economic loss doctrine applies to UTPCPL claims. We are, of course, bound by *Knight*.). Because *Dixon* did not add anything new to the analysis, *Powell*'s reasoning applies to it equally.

9

The court in *Powell* provided three reasons to support its conclusion that district courts in this Circuit remain bound by *Werwinski*. First, it noted that the Pennsylvania Supreme Court has applied the economic loss doctrine to bar a private cause of action under other statutes. *Id.* For example, in *Excavation Technologies,* it held that the plaintiff could not bring a negligence claim for economic losses premised on the utility company's duties under Pennsylvania's One Call Act. 985 A.2d at 844. The court reasoned that the "legislature was presumably aware of the economic loss doctrine when it established the statutory scheme governing the relationship among the entities required to participate under the [One Call] Act." *Id.* at 843. Because the Superior Court in *Knight* did not discuss whether the legislature abrogated the economic loss doctrine in the UTPCPL, *Powell* found that *Knight*'s distinction between negligence and statutory claims is of limited persuasive value. *See* 2018 WL 994478, at *9.

Second, *Powell* stated that *Knight* is inconsistent in its characterization of the UTPCPL. See *id.* at *10. Although it held that UTPCPL claims were not barred by the gist of the action doctrine, *Knight* summarily concluded that UTPCPL claims were "statutory claims . . . and do not sound in negligence." *Knight*, 81 A.3d at 952. Finally, the Supreme Court has recognized, most recently in *Dittman v. UPMC*, that the applicability of the economic-loss doctrine turns on whether the duty at issue "arises independently of any contractual duties between the parties." 196 A.3d 1036, 1054 (Pa. 2018) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)). "Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a

10

breach of that duty may support a tort action." *Id.* *Powell* determined that *Knight* did not analyze the UTPCPL in terms of the source of the parties' duties, whereas *Werwinski* did. *See* 2018 WL 994478, at *10. [4] Largely for the reasons articulated in *Powell*, the Court concludes it remains bound by the Third Circuit's holding in *Werwinski* and the economic loss doctrine bars the UTPCPL claim.

VI

Michael alleges that he is entitled to an accounting because he is "unable to determine the precise nature and amount of those benefits and funds received by defendant as principal versus interest" as well as restitution with respect to excess amounts owed to him. (Compl. ¶¶ 69–71.) Chase responds that Michael fails to allege that he "requested an accounting or payment history for the loan at any time and does not include documentary proof of any demand for an accounting." (Resp. Opp'n at 25.) Further, since Michael is the executor of Bernadette's estate, Chase asserts that he "maintains the ability to request a payment history for the [l]oan." (*Id.*)

Under Pennsylvania law, the entitlement to an accounting may be legal or equitable. *Lightman v. Marcus,* No. CIV.A. 12-97, 2012 WL 1344378, at *3 (E.D. Pa. Apr. 18, 2012). Michael fails to allege whether his claim is in law or in equity, but because he has an adequate remedy at law for breach of contract, *see infra* Part VII, he cannot maintain a claim for an equitable accounting. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for

---

[4] Moreover, three years after *Knight*, the Third Circuit, albeit in a non-precedential opinion, affirmed the dismissal of a UTPCPL claim as barred by the economic loss doctrine, citing *Werwinski*'s binding precedent. *See Berkery*, 658 F. App'x at 175.

11

an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law.").

Pennsylvania Rule of Civil Procedure 1021(a) provides for the right to demand an accounting at law. Pa. R. Civ. P. 1021(a). "The right to relief in the form of an accounting pursuant to Rule 1021 is merely an incident to a proper assumpsit claim." *Buczek v. First National Bank of Mifflintown,* 531 A.2d 1122, 1123 (Pa. Super. Ct. 1987). A legal accounting is "not a claim, but a demand for relief." *Canfield v. Statoil USA Onshore Properties Inc.,* No. CV 3:16-0085, 2017 WL 1078184, at *25 (M.D. Pa. Mar. 22, 2017) (citing Pa. R. Civ. P. 1021(a)). To state a claim for a legal accounting, a plaintiff must allege that:

> (1) there was a valid contract, express or implied, between the parties whereby the defendant
> (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for the monies received by the defendant, or
> (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and
> (2) the defendant breached or was in dereliction of his duty under the contract.

*Haft v. United States Steel Corp.,* 499 A.2d 676, 677–78 (Pa. Super. Ct. 1985). Thus, the right to an accounting at law attaches only where the defendant has breached a valid contract with the plaintiff. *Lightman*, 2012 WL 1344378, at *4 (citation omitted). Michael has alleged that there was a valid mortgage contract with Chase and that Chase failed to "provide an explanation of the application of the moneys paid to [Chase]." (Compl. ¶ 70.) Because a legal accounting is "incidental to a breach of

12

contract claim," Chase's Motion to Dismiss is denied with respect to this claim. *Daikuzono v. Surgical Laser Technologies,* No. CIV.A. 96-0833, 1997 WL 52023 at *4 (E.D. Pa. February 3, 1997); *see Zamias v. Fifth Third Bank*, No. 3:17-CV-153, 2018 WL 355462, at *17 (W.D. Pa. Jan. 9, 2018) ("[A]" legal accounting is not a separate claim but rather a form of relief that accompanies a formal breach of contract claim.").

VII

Michael asserts that Chase breached the mortgage agreement by billing him based on the terms of an unexecuted Loan Modification Agreement and an Adjustable Rate Rider that contains his forged signature. (Compl. ¶¶ 77–78.) Chase contends that Michael's breach of contract claim is barred by the voluntary payment doctrine, which provides that payment voluntarily made with full knowledge of the facts and without fraud or duress cannot be recovered. *See Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. Ct. 1985) ("Where, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered."). The court in *Abrevaya v. VW Credit Leasing Ltd.* stated:

> [I]f one chose to pay without full knowledge of the facts, or because of the other party's fraud, or under some type of duress, then the voluntary payment doctrine does not apply; the decision to pay in the first two circumstances would not be fully informed, and a payment made under duress would not be voluntary[.]

*Abrevaya v. VW Credit Leasing, Ltd.*, No. CIV.A. 09-521, 2009 WL 8466868, at *2 (E.D. Pa. July 22, 2009). The voluntary payment doctrine is not properly considered at the motion to dismiss stage when the factual record is insufficient to determine its viability, as it is here where Michael alleges, among other things, that his signature was forged on a key document. *Gallo v. PHH Mortg. Corp.*, 916 F. Supp. 2d 537, 553 (D.N.J. 2012);

13

*see Prod. Source Int'l, LLC v. Foremost Signature Ins. Co.*, 234 F. Supp. 3d 619, 625 (D.N.J. 2017) ("Application of the voluntary payment rule cannot be resolved on a motion to dismiss, where the complaint does not establish whether the plaintiff's payment was truly voluntary.").

## VIII

In his final count, Michael argues that Chase has been unjustly enriched by "charging plaintiff interest in excess of 5.75% as well as resetting the payments pursuant to an unexecuted Loan Modification Agreement." (Compl. ¶ 84.) Chase maintains that Michael cannot plead an unjust enrichment claim "where an existing and valid contract exists" because he has "admitted the validity of the [m]ortgage." (Mot. Dismiss at 22.)

To state an unjust enrichment claim, a plaintiff must allege: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (1999). Under Federal Rule of Civil Procedure 8(e)(2), parties are permitted to pursue alternative theories of recovery based on both breach of contract and unjust enrichment. Fed. R. Civ. P. 8(e)(2); *Constar v. Nat'l Distribut. Ctrs.*, 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000). However, "'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 448 (1969).

Thus, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between parties is founded on a written instrument." *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005). Michael alleges that the mortgage agreement constitutes the written contract governing the relationship between the parties. *See* (Compl. ¶ 72) ("Said mortgage, vis a vis plaintiff, has remained in full force and effect, never having been modified, rescinded, or superseded.") Michael's claim for unjust enrichment is dismissed accordingly.

## IX

In his response to the Motion to Dismiss, Michael asks to be allowed to amend his Complaint should the Court dismiss any of his claims. (Resp. Opp'n at 16.) While Federal Rule of Civil Procedure 15 instructs courts to "freely give" leave to amend, leave may be denied if, among other things, amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). For the reasons given in this Memorandum, amendment of the dismissed claims would be futile.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.